1  Tom Myers (SBN 176008)
   E-Mail: tomm@aidshealth.org
2  Samantha R. Azulay (SBN 283424)
3  E-Mail: Samantha.azulay@aidshealth.org
4  AIDS Healthcare Foundation
   6255 W. Sunset Blvd., 21st FL
5  Los Angeles, CA 90028
6  323-860-5200
   Fax: 323-467-8450
7
8  Attorneys for Plaintiffs
   AIDS HEALTHCARE FOUNDATION
9  MICHAEL WEINSTEIN
10
11              UNITED STATES DISTRICT COURT
        CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION
12
                                    Case No. CV12-10400
13 AIDS HEALTHCARE
   FOUNDATION; MICHAEL          COMPLAINT FOR DAMAGES AND
14 WEINSTEIN,                   DECLARATORY AND INJUNCTIVE
                                RELIEF BASED ON RETALIATORY
15                              CONDUCT, VIOLATIONS OF THE
                                FEDERAL FALSE CLAIMS ACT,
16         Plaintiffs,          VIOLATIONS OF
                                CONSTITUTIONAL RIGHTS, AND
17      vs.                     DEFAMATION
18 LOS ANGELES COUNTY; LOS
   ANGELES COUNTY DEPARTMENT
19 OF PUBLIC HEALTH; LOS        JURY TRIAL DEMANDED
   ANGELES COUNTY DEPARTMENT
20 OF PUBLIC HEALTH, DIVISION OF
   HIV AND STD PROGRAMS; LOS
21 ANGELES COUNTY DEPARTMENT
   OF THE AUDITOR-CONTROLLER;
22 LOS ANGELES COUNTY
   DEPARTMENT OF HEALTH
23
   SERVICES; JONATHAN E.
24 FIELDING, M.D.; MARIO J. PEREZ;
   ZEV YAROSLAVSKY; GLORIA
25 MOLINA; and DOE DEFENDANTS 1-
26 10,
27         Defendants.
28

FILED
CLERK, U.S. DISTRICT COURT
DEC - 5 2012
CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

**JURISDICTION AND VENUE**

1.    Plaintiffs AIDS Healthcare Foundation ("AHF") and Michael Weinstein ("Weinstein") bring this complaint pursuant to 28 U.S.C. section 1331; the First Amendment to the United States Constitution; the Civil Rights Act, 42 U.S.C. section 1983; and the False Claims Act, 31 U.S.C. section 3730.  In addition, this Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. section 1367.

2.    Venue lies in this judicial district under 28 U.S.C. section 1391, in that Defendants have offices and residences within this judicial district and thus are deemed to reside within this judicial district.

**INTRODUCTION**

3.    Los Angeles County is the largest county in California and the jurisdiction with the second largest HIV/AIDS disease burden in the United States. As such, it is given the second largest amount of federal funding for HIV/AIDS treatment and prevention.

4.    Rather than using its substantial funding to accomplish the goals in which it is tasked, Los Angeles County, Los Angeles County Department of Public Health, and various of their divisions and leaders, have indulged in the gross misuse of resources, waste of public funds, favoritism, professional back-scratching, and retaliation against those that hold them accountable for doing their jobs.

5.    AHF is committed to treating hundreds of thousands of patients in Los Angeles County and around the globe, and is also dedicated to advocating for government and healthcare systems to be accountable, transparent and devoted to serving the public's health.   In doing so, AHF has uncovered, reported, and publically criticized the Defendants' for their ineffectiveness and improprieties.

6.    In return, Defendants have initiated a retaliatory campaign against Plaintiffs, including their conspiracy to create a bogus audit, demand millions of dollars from

AHF, and then flaunt these false audit findings to other providers and the public at large in an effort to intimidate providers into submission.  Defendants' actions have injured AHF and its mission and, as a consequence, the public at large.

## THE PARTIES

7.      Plaintiff AHF is a California nonprofit corporation and a participant in the State Medi-Cal program.  Its mission is to provide cutting edge medical care and advocacy to people with HIV/AIDS regardless of ability to pay.  Among other things, it operates a number of HIV/AIDS outpatient medical clinics and AIDS specialty pharmacies in California, which primarily serve a low income/indigent patient population, including Medi-Cal beneficiaries.

8.      Plaintiff Michael Weinstein is the Founder and President of AHF, and a Los Angeles County resident and taxpayer.  Weinstein pays property tax and other taxes related to his residency and ownership interests in real property in Los Angeles County.

9.      Defendant County of Los Angeles ("County") is the public, governmental entity serving the people of Los Angeles County.

10.     Defendant County of Los Angeles Department of Public Health ("DPH") is the county agency charged with the preservation of the public health in Los Angeles County.  Los Angeles County is a political subdivision of the State of California.  DPH operates a Sexually Transmitted Disease Program and the Office of AIDS Programs, which were folded together in or around 2011 to form the Division of HIV and STD Programs.

11.     Defendant Jonathan E. Fielding, M.D. ("Fielding") is the Director and Health Officer of DPH.  His responsibilities include surveillance and control of both communicable and non-communicable diseases, and health protection for the County's 10 million residents. He directs a staff of 4,000 with an annual budget

1   exceeding $750 million.  Fielding is sued in his official, representative and
2   individual capacities.

3   12.     Defendant County of Los Angeles Department of Public Health, Division of
4   HIV and STD Programs ("DHSP") is an administrative unit of DPH whose
5   mission is "to respond to the HIV/AIDS epidemic in Los Angeles County by
6   preventing its spread, maximizing health and social outcomes, and coordinating
7   effective and efficient targeted services for those at risk for, living with, or affected
8   by HIV."  DHSP is charged with, among other things, administering and
9   disbursing funds received by the state and federal government, through the County,
10  to provide health services to people in need, including people living with
11  HIV/AIDS, in the Los Angeles metropolitan area.

12  13.     Defendant Mario J. Perez ("Perez") is the Director of DHSP.  As Director of
13  DHSP, Perez plays a substantial role in the administration of funding for HIV
14  programs in Los Angeles County.  Perez works closely with, and reports to,
15  Fielding.  Perez is sued in his official, representative, and individual capacities.

16  14.     Defendant Zev Yaroslavsky ("Yaroslavsky") is a County Supervisor with
17  the Los Angeles County Board of Supervisors (the "Board") and represents the
18  Third District of Los Angeles County.  The Board is the elected, governing body of
19  the County of Los Angeles, a charter county in the State of California.
20  Yaroslavsky is sued in his official, representative and individual capacities.

21  15.     Defendant Gloria Molina ("Molina") is a County Supervisor with the Board
22  and represents the First District of Los Angeles County.  Molina is sued in her
23  official, representative and individual capacities.

24  16.     Defendant Los Angeles County Department of Auditor-Controller ("Auditor
25  Controller") is the public, governmental entity whose mission is to "[p]rovide the
26  County with expert advice and leadership in business and financial practices to
27  promote integrity, accountability, compliance and innovation."  The Auditor
28  Controller is directed to act in a neutral capacity and reports to the Board.

17.     Defendant County of Los Angeles Department of Health Services ("DHS")
is the county agency that is responsible for providing certain health services to
residents of Los Angeles County and operates hospitals throughout the county.
DHS oversees DPH, DHSP, Fielding and Perez.

18.     The County, DPH, DHSP, DHS, Yaroslavsky, Fielding, Perez, and Molina
are hereinafter referred to as "the County Defendants."

19.     The true names and capacities, whether individual, corporate, associate, or
otherwise, of defendants Does 1 through 10, inclusive, are presently unknown to
Plaintiffs and for that reason those Doe defendants are sued by such fictitious
names.  Plaintiffs are informed and believe, and thereon allege, that each of Does 1
through 10 are in some way responsible for the damages alleged herein.  Plaintiff
will seek leave of this Court to amend its complaint when the true names and
capacities of said defendants are known.

20.     Plaintiffs are informed and believe, and thereon allege, that at all times
relevant hereto, unless otherwise specified, Defendants were each acting as an
agent, servant, or representative of each of said other Defendants, were at all times
mentioned herein acting within the course and scope of said agency, servitude or
representation, and that all acts of said Defendants and each of them, were
authorized, directed and ratified by each of the remaining Defendants.

## GENERAL ALLEGATIONS

### State and Federal Funding to Los Angeles County and its Administrative Units

21.     AIDS is one of the worst pandemics in history. By the end of 2010, an
estimated 30 million people had died from AIDS and 34 million people were
infected with HIV/AIDS worldwide. Each day, more than eight thousand people
die worldwide from AIDS and thirteen thousand more contract the virus.  Indeed,

in 2011, 1.7 million people died from AIDS and 2.5 million became newly infected.

22.     To help deal with the crisis on a local level, the United States federal government provides monies under the Ryan White Comprehensive AIDS Resource Emergency ("CARE") Act, Title 42 U.S.C Section 300ff-11 et seq., to local governments, including the County of Los Angeles, for emergency HIV/AIDS services. A federal department called the Health Resource Services Administration ("HRSA") administers the program on behalf of the federal government and distributes funds to Eligible Metropolitan Areas ("EMAs") through various public agency grantees.

23.     In the case of the Los Angeles EMA, Los Angeles County acts as the designated statutory "grantee," receives the CARE Act and other funds distributed under the program, and contracts with various public and private organizations for the allocation and use of the funds.

24.     While the County is the named "grantee," the Board of Supervisors formally accept the funds from HRSA and delegate management of the funds to DPH, who in turn, gives the funding to DHSP to spend.   Therefore, the applications for receiving funds, and all subsequent spending of the funds received, is a collaborative effort amongst the County Defendants.

25.     In addition, the County receives monies from a variety of local and state sources, including funds allocated by the California Department of Health Services Office, and also utilizes its own so-called "County AIDS funds."  The County must provide County AIDS funds in accordance with the "maintenance of effort" requirements set forth in the CARE Act and as dictated by the other funding sources.

26.     The County, as the statutory grantee of all of the above-described funds (hereafter collectively "AIDS Funds"), through DPH and DHSP, must disburse these funds to various public and private organizations pursuant to the express

1    requirements of all applicable federal, state and local laws, including the CARE

2    Act, California's Welfare & Institutions Code, County ordinances, and the

3    directives of the Los Angeles County Board of Supervisors and certain other

4    County agencies.

5    27.    Further, the County, as a statutory grantee of the AIDS Funds, must comply

6    with other statutory requirements when it applies for the AIDS Funds.

7    Specifically, in order to obtain Ryan White CARE Act funds, County Defendants

8    file an Application with HRSA to receive funds.  In this Application, County

9    Defendants must set forth their current HIV/AIDS treatment and prevention needs

10   in the County, and describe how it will allocate the Ryan White CARE Act funds

11   it is awarded.  For example, in its FY 2011 Ryan White Part A Application,

12   County Defendants requested $49,812,316, and represented that no less than 75%

13   of Part A funds would be allocated toward "core medical services," with 85%

14   being allocated to direct services, 10% to grantee administration, and 5% to

15   quality management.[1]  HRSA relies on these representations in determining the

16   amount of funds to award the County Defendants.

17

18                    **Misuse of Ryan White CARE Act Fund Awards**

19   28.    On information and belief, Defendants have continually made false

20   statements and claims to HRSA related to the funds they request from HRSA, and

21   their allocation of the funds once awarded. Defendants' false claims and misuse of

22   funds include, but are not limited to the following:

23                 a.    Defendants failed to provide County AIDS Funds in accordance with

24                       the "maintenance of effort" requirements set forth in the CARE Act

25                       and as dictated by the other funding sources.

26

27   _____

28   [1] A copy of the 2011 Part A Application presentation may be found at:
     http://publichealth.lacounty.gov/aids/reports/RWPartAFY2011Application1-11.pdf

b. Defendants misrepresented to HRSA as to where Part A funds were to be allocated and how they will spend the Ryan White CARE Act funds that are awarded.  Specifically, Defendants grossly understate the amount they spend on administrative costs.

c. Defendants misrepresented their net county costs.

d. Defendants spent AIDS Funds on building a lavish media center in their administrative offices that is not used for the care and prevention of HIV/AIDS.

e. Defendants failed to spend all of the Ryan White CARE funds awarded in a timely and effective fashion, and then toward the end of each contract year scrambled to spend it, resulting in funds not being used to maximize benefits to the HIV/AIDS population.

f. Defendants failed to timely prepare Administrative Mechanism Reports as mandated by federal law.

g. Defendants requested an additional $30 million dollars in Ryan White CARE funds under the pretense that they needed these funds to convert patients to the Healthy Way L.A. Program, when they knew that they could not convert these patients at a fast enough rate that would require this additional funding for conversions.  Defendants knew that only one-third of the population would transition to the Healthy Way L.A. Program, and to date have only transitioned around 700 patients.

h. Defendants pushed through the implementation of HIV Medical Outpatient (MO) and Medical Care Coordination (MCC) contracts on a rush basis, to the detriment of providers and patients, based on their misrepresentation that HRSA continually threatened to audit them. On information and belief, HRSA has never threatened to audit

County Defendants based upon the timing of MO and MCC contract implementation.

29.    Plaintiffs have repeatedly and publically reported Defendants' deficiencies, misrepresentations, and false claims, to the Defendants, as well as to state and federal government authorities.

30.    Plaintiffs' public outcry against Defendants has included repeated press conferences, public statements and lawsuits protesting financial improprieties, mismanagement and other missteps by Defendants.

### Violations of Health and Safety Laws: Condoms in Porn

31.    Los Angeles County is the *de facto* capital of the hardcore pornography industry, which produces thousands of films every year. DPH officials conducted research and documented the fact that STDs are common among adult performers in hardcore pornography and that there have been multiple HIV outbreaks.  Dr. Jonathan Fielding himself admitted that "[s]exually transmitted diseases are rampant" within the industry.

32.    After conducting considerable research on the subject in and around 2008, DPH cited numerous figures confirming an epidemic of sexually transmitted diseases among performers, including that:

>    a.   Performers in hardcore pornography are **ten times** more likely to be infected with a sexually transmitted disease than members of the population at large.
>    b.   There were 2013 documented cases of chlamydia among performers between the years 2003 and 2007.
>    c.   There were 965 documented cases of gonorrhea among performers in the same period.
>    d.   At least 15% of reinfected performers had four or more infections over the course of a year.

e. In the period of April 2004 to March 2008 there had been "2,847 STD infections diagnosed among 1,884 performers" in the hardcore pornography industry in Los Angeles County.

33. Despite this clear threat to public health, DPH decided to do nothing about it.

34. Throughout 2008 and 2009, AHF approached the County Defendants and urged them to take action to reduce the risk of infection to performers and their non-industry sexual partners. Specifically, Plaintiffs urged the County, under the authority of Dr. Jonathan Fielding, to enforce its own Health and Safety Codes. The County Defendants refused to take action, and Plaintiffs publically criticized them for their shortcomings.

35. Plaintiffs' public outcry against Defendants included repeated press conferences, public statements, a lawsuit, and an effort to get a measure on the next election ballot that would hold public officials accountable for reducing the risk of STDs in the adult film industry.

36. Specifically, in July 2009, AHF sued DPH seeking a writ of mandate to force them to comply with their own regulations related to the adult film industry—sections 120575 and 120175 of the Health and Safety Code.

37. In addition to the lawsuit, AHF launched a campaign to get a measure on the ballot that would force the County of Los Angeles to take responsibility for the health and safety of adult film performers.

38. Preliminarily, in 2010, Plaintiffs circulated a petition to get their initiative on the City of Los Angeles ballot and obtained more than enough signatures to present their initiative to the City Council.  Once presented, the City Council almost unanimously adopted Plaintiffs' initiative.

39. Plaintiffs then drafted a more robust initiative, and circulated a petition to get the initiative on the Los Angeles County Ballot.  Plaintiffs succeeded, and on July 24, 2012, Measure B, formally known as the County of Los Angeles Safer Sex

in the Adult Film Industry Act, found its official place on the November 6, 2012
Los Angeles County ballot.  Measure B requires the County Defendants to enforce
the law.

40.    Plaintiffs' public activism generated, amongst Defendants, considerable
opposition to and animus toward Plaintiffs because Defendants did not want to
enforce Measure B.

41.    To the Defendants' dismay, in early May of 2012, a pre-election survey
showed that Measure B was highly supported by the citizens of Los Angeles, and
was predicted to pass.  In both September and October of 2012, Plaintiffs
organized random sample surveys with validated results, which also confirmed the
high level of support for Measure B.

42.    On November 6, 2012, the citizens of Los Angeles County voted in favor of
Measure B.  The law goes into effect in December, 2012.

**Violations of Competitive Bidding Laws: The Ramsell Sole-Source Contract**

43.    On November 2, 2010, the California Department of Health Services
implemented a new state Medicaid program, commonly known as the "California
Bridge to Reform."  The Bridge to Reform's objective was to anticipate
implementation of the federal Affordable Care Act's ("ACA") and ease the
transition to any related health coverage changes.  In particular, a Los Angeles
County Bridge to reform initiative provided for the creation of a pharmacy
network that would expand pharmacy access to patients with HIV/AIDS.

44.    Less than two weeks after the commencement of California's Bridge to
Reform, on December 14, 2010, the Board authorized DHS to submit action items
related to the new Bridge to Reform program.  Over a year after California's
Bridge to Reform was initiated, on January 20. 2011, DHS reported that it was in
negotiations to contract with a third party to provide pharmacy administrative
services for this new network.  Finally, over fifteen months after California's

Bridge to Reform was initiated, on February 7, 2012, DHS recommended in writing, that the Board delegate DHS the authority to award Ramsell the pharmacy administrator service contract on a non-competitive basis.

45.    This was a $75 million dollar per year contract arrangement between the County and a private party, and was pushed through for approval in just one day. In explanation for why this contract should be awarded on a non-competitive basis, County Defendants simply stated that there was no time for a standard RFP process, and (incorrectly) that there was only one entity they thought could offer these pharmacy administrator services.

46.    On that same day, the Board was presented with the Ramsell proposal and unanimously approved DHS's recommendation, despite having its own concerns about speedily awarding a $75 million dollar annual contract.  In fact, Yaroslavsky expressed his own concerns noting that he had "very little time" to look at DHS's recommendation because it was put before the Board "at the last minute."  Yet without further discussion, Yaroslavsky, Molina and other members of the Board all voted to approve this massive contract.

47.    Shortly thereafter, Plaintiffs vehemently protested the Defendants' decision to award a $75 million dollar per year contract without competitive bidding, and demanded that DHS open up competitive bidding.  DHS wrote Plaintiff Weinstein back personally, stating that they would not void the contract with Ramsell, citing to the Board's approval of the contract.  AHF then wrote to the Board reiterating its protest to the sole-source award of the contract to Ramsell, and pointing out the corresponding violations of the law in awarding this contract.  Defendants still refused to withdraw the contract award and open the contract to a lawful bidding process.

48.    Since the Defendants refused to follow the competitive bidding rules, Plaintiffs were forced to file suit in state court seeking a writ of mandate.  On April 6, 2012, Plaintiffs sued the County, Board, DHS, and the individual Board

Supervisors, arguing that their award of the contract to Ramsell extended from a non-competitive bidding process that was procedurally and substantively flawed and, therefore, legally invalid under applicable law governing the award of county contracts to private entities.

49.    The Superior Court of Los Angeles County agreed.  On June 6, 2012, it issued a ruling that the County had abused its discretion, and granted a writ of mandate compelling the County to void the contract with Ramsell and comply with the law in any further contracting for pharmacy administrator services.[2]

### **Defendants Retaliate Against Plaintiffs for Their Public Activism**

50.    Plaintiffs' challenges to the Defendants' spending and operations resulted in considerable hostility amongst the Defendants.

51.    In response, Defendants used their improper influence and authority in very specific ways to silence and punish Plaintiffs, and to hamstring AHF's ability to compete for AIDS Funds. In their latest campaign to harass, intimidate, and defame AHF, Defendants pursued a phony audit, which manufactured findings based on inaccurate information, and is the purported basis for Defendants' threatening to withhold over $1.7 million dollars in payments to AHF.

#### **Retaliatory Audits**

52.    AHF is the County's largest HIV/AIDS medical care and prevention service provider.  Since 1998 it has contracted with the County to provide these services, with funding in part provided by the Ryan White CARE Act, under Contract H-209006 (the "AHF-LAC Contract").  A true and correct copy of the AHF-LAC Contract is attached as Exhibit A.

---

[2] Nine days later the County Defendants still awarded a "new" and allegedly "temporary" contract to Ramsell, pending the issuance of an RFP.  The validity of this contract is still being litigated by Plaintiffs before the Superior Court of Los Angeles County.  As of December 4, 2012, County Defendants have failed to issue a Request for Proposal related to these pharmacy administrator services.

53.    Sometime in 2010, DHSP contacted the Auditor Controller and asked it to conduct an audit on AHF based on the knowingly false assertion that AHF had not filed an "allocation plan" with DHSP (the "2010 Audit").

54.    Typically, it is common practice for the Auditor Controller to use the allocation plan submitted by the providers, and accepted by DPH and DHSP, as the standard to audit against.  However, since DHSP told the Auditor Controller that AHF had no allocation plan, they merely interpreted the AHF-LAC Contract as they chose and applied an allocation plan they created.

55.    On September "xx," 2010, the Auditor Controller issued its draft report, claiming, according to its own calculations, that AHF had overbilled the County $1,752,439.00 million.  The report did not cite to any document or authority that it used to support its findings.

56.    In fact, there is no authority or basis for the findings in the audit. Defendants' proffered explanation for the 2010 Audit is merely a pretext for their true intent to retaliate against Plaintiffs for publically criticizing Defendants.

57.    On November 24, 2010, Plaintiffs responded to the Auditor Controller's report, strenuously objecting to their findings. This response detailed the reasons why the findings were invalid.  Among other things, Plaintiffs pointed out that the findings were:

       a.  Factually incorrect;

       b.  Contrary to the plain language of the AHF-LAC Contract even under the most liberal construction;

       c.  Contrary to the most fundamental principles of contract law;

       d.  Contrary to the parties' course of dealing over the past 12 years;

       e.  Contrary to common sense, intuition and public policy;

       f.  Contrary to the methodology used in numerous administrative and programmatic audits in the past; and

       g.  Based on crude and nonsensical calculations.

58.   Such communication by Plaintiffs went unanswered by the Auditor Controller.

59.   More than twenty months passed, until May 2012 (around the time AHF sued the County Defendants over the Ramsell contract, and when Measure B picked up strong public support), when the Auditor Controller issued another, identical report, again claiming that AHF owes the County over $1.7 million.

60.   Plaintiffs responded to these allegations in a letter, again objecting to the absurdity of the audit findings.  As before, Plaintiffs did not receive a response from the Auditor Controller.

61.   Instead, on September 14, 2012, as Plaintiffs ramped up their Measure B campaign, Defendants ramped up their threats against Plaintiffs by demanding that AHF immediately pay over $1.7 million to the County within two weeks. Plaintiffs responded to this demand on September 20, 2012.  But once again, Defendants refused to reply to Plaintiffs objections to the audit.

62.   The Auditor Controller also refused to back off of the September 2010 audit findings despite learning that the audit was based on incorrect information.

63.   In September 2012, Weinstein met with three representatives of the Auditor Controller as well as a representative from one of the Board of Supervisors' offices.  Weinstein produced the final acceptance report of AHF's expenditures and methodologies for the year of the audit.  This report included the allocation plan AHF had actually submitted to the County, and the one that would have been audited against had DHSP not misrepresented that AHF lacked an allocation plan. Weinstein urged the Auditor Controller to withdraw the audit in light of this information.  The Auditor Controller refused, claiming that it was out of its hands. Weinstein then urged the Auditor Controller to suspend the $1.7 million dollar demand until the dispute was sorted out.  Again, the Auditor Controller said that it could not help and that the issue was to be determined by DHSP, who had demanded this audit in the first place.

64.    The County Defendants continued to demand this money, and Plaintiffs continued to refute their accusations and demands.  On October 11, 2012, Defendants sent out another letter, again demanding that $1,752,439.00 million dollars be paid to the County in two weeks time. Defendants also threatened to suspend payments owed to AHF for its care of HIV/AIDS patients in Los Angeles County.  Again, Plaintiffs objected to these demands by sending a letter the following day.

65.    On election day, November 6, 2012, Defendants, through Perez, once again demanded that AHF pay it over $1.7 million dollars.  Plaintiffs responded the next day, again refuting Defendants' claims.

66.    In addition to the 2010 Audit detailed above, over the past ten years Defendants have engaged in repeated and unnecessary surprise audits of Plaintiffs' facilities, each time shortly after Plaintiffs have criticized Defendants. These audits were much more frequent and invasive than the audits required as part of Defendants' prescribed duties and, because Plaintiffs were asked to stop their regular duties to assemble files, data and other information requested by Defendant for the audits, these audits substantially interfered with the regular conduct of business and provision of services at Plaintiffs' facilities.

67.    Indeed, this was only one more tactic in a long line of retaliatory conduct Defendants have undertaken against Plaintiffs to halt their continuing criticism of the Defendants.

### Using the Bogus 2010 Audit to Injure Plaintiffs' Reputations and Intimidate Providers

68.    In yet another example of Defendants' continuing and pervasive retaliatory actions toward Plaintiffs, Defendants regularly attempt to tarnish Plaintiffs' reputations.

69.    In addition to creating a bogus audit and disingenuously demanding millions of dollars from a nonprofit organization, Defendants have escalated their attacks

on Plaintiffs by parading this audit in front of other providers and the public at large.  Specifically, Defendants have each discussed AHF's 2010 Audit and their allegation that AHF overbilled the County by over $1.7 million dollars in several public forums.  In fact, at a County of Los Angeles Health and Mental Health Services Cluster meeting around September or October of 2012, Defendants, including Yaroslavsky's health deputy, Elan Shultz, singled out and raised the AHF audit despite it being entirely unrelated to any item on the agenda that day.

70.    At another weekly Health and Mental Health Services Cluster meeting in or around the second half of 2012, County Defendants, specifically Mario Perez, brought the very representatives from the Auditor Controllers' office that handled AHF's 2010 Audit.  The Auditor Controller had nothing to do with the meeting agenda, and in fact did not speak at all. Undoubtedly, these particular individuals were brought to the meeting for the sole purpose of intimidating Plaintiffs.

71.    In addition, at Board meetings in July 2012, and again in September or October of 2012, Yaroslavsky continually threatened and intimidated the Plaintiffs by specifically naming Plaintiff Weinstein and making derogatory comments about his professionalism.

72.    Most recently, at the November 20, 2012 Los Angeles County Board of Supervisors meeting, Defendant Yaroslavsky in discussing the AHF audit exclaimed, "We don't want to feel hostility from the United States Government when they ask us 'why did you give money to someone who spent it incorrectly?'"Yaroslavsky's comment suggests that AHF mismanaged federal funds, when he knows that the audit lacks any legal or factual basis.

73.    Naming AHF and only AHF to all of the other County AIDS service providers and others at the meetings and using an inflammatory number of $1.7 million dollars without explaining how the number was calculated, or that fact that it has been vigorously disputed for two years, can only be viewed as a purposeful retaliatory act.  Yaroslavsky's additional comments at the meeting about AHF

being a $360 million revenue-grossing nonprofit agency, further supports that he and Defendants seek to engender resentment toward AHF throughout the AIDS/HIV health community by identifying them as a rich, greedy and untrustworthy agency that has been paid too much of the County's precious funds.

74.    Furthermore, Supervisor Molina regularly exhibits her animus toward Plaintiffs in public meetings.  In one example, Molina repeatedly told the Board meeting audience that AHF misinformed its patients and encouraged them to come to the meeting and complain about things that AHF made up.  At this same meeting, when a representative of AHF stated that he heard Supervisor Molina threaten to cut another provider's funding because it spoke out in support of AHF, Molina started screaming at this gentleman and accusing AHF of misinforming its patients.

75.    Again, Defendants seek to punish and provoke hostility toward their critics, like AHF, and in the end, divert AIDS Funds to their favored providers without providing any corresponding public benefit to the residents of Los Angeles County.

### Reduction in Services and Favoritism at the Expense of Patients

76.    County Defendants display a pattern of improper government contracting, favoring those providers that contribute campaign cash and abstain from criticizing the Defendants, and punishing those like AHF, that hold Defendants accountable to do their jobs in a manner that best serves the public.

77.    A prime example is the County's reallocation of resources in the Antelope Valley of California.  Until recently, County Defendants allocated funding to AHF and other health providers in Antelope Valley.

78.    In 2009, the County Defendants pulled this funding from AHF.

79.     Instead, County Defendants voted to allocate all funding in this area(approximately, $1.2 million dollars) solely to the Tarzana Treatment Center. ("Tarzana").

80.     Tarzana had less experience than AHF and other providers in the area at treating HIV/AIDS.  However, many of the principals of Tarzana are significant campaign contributors to Yaroslavsky.

81.     Defendants' retaliatory act of cutting 100% of its funding to AHF in Antelope Valley not only caused AHF significant monetary loss, but was done at the expense of patients, further demonstrating Defendants' maleficence and ill will toward Plaintiffs.  Those interests directly conflicted with Defendants' statutory obligations to allocate AIDS Funds most effectively and with absolute undivided loyalty to the interests of the populations they serve.

82.     AHF, true to its mission, still serves its patient population in the Antelope Valley.  Without any funding from the County, AHF serves these patients at a substantial financial loss.

**Cutting Services to HIV/AIDS Patients in Order to Punish Plaintiffs**

83.     In another instance, the County sent out a "Request for Proposal" ("RFP") #2011-01 pertaining to Ryan White Program Client Benefits Administrative Services, wherein entities, including AHF, were able to submit proposals by the stated deadline.  The County had determined that there was an essential need for benefits specialty services to facilitate patient access to disability benefits and programs to ensure that people living with HIV are receiving all of the aid for which they are eligible and entitled.  Defendants sought a contractor to implement and manage the benefit specialty program.  AHF responded to this RFP, and in fact was the only organization to respond to this RFP.   Rather than award AHF the contract, Defendants, through Mario Perez, notified AHF that they decided not to offer the benefit specialty service to patients anymore.  The end result was that

AHF lost a $3 million dollar contract, and the services that the Defendants had identified as vital to the community were not provided.  As a result, the needs of the most vulnerable County residents were not served.

84.    Such a heartless and irrational decision can only be attributed to a desire by Defendants to punish Plaintiffs for their criticism of Defendants' mismanagement and ineptitude, and to eliminate any major competition for funds for Defendants' favored agencies – i.e., the agencies that uncritically tow DHSP's line.

85.    Plaintiffs repeatedly addressed all of these matters to the Los Angeles County Counsel's Office, DPH, DHSP, DHS, the Auditor-Controller's Office and to the Board; Plaintiffs received little or no response.  Plaintiffs sent correspondence to each of these bodies outlining their claims and damages as set forth herein, including complaints about false claims, mismanagement and lack of oversight of the agency, favoritism and DHSP's bias against AHF in the allocation of AIDS Funds, and the retaliatory conduct toward Plaintiffs.

86.    Because Defendants' responses to all of Plaintiffs' claims were either non-existent or inadequate, Plaintiffs proceeded to file this action.  All of Defendants' conduct described herein constitutes continuing violations of Plaintiffs' rights and/or continuing torts and thereby extend all applicable time periods.

## FIRST CAUSE OF ACTION

### First Amendment Retaliation Under The United States Constitution
### [Against All Defendants]

87.    Plaintiffs refer to and incorporate each of the allegations in each of the preceding paragraphs, as if fully set forth herein.

88.    Defendants have acted and continue to act under color of state law and all actions and omissions complained of herein were in execution of actual or implied official policies, practices and procedures.

89.   As described in detail above, Plaintiffs have filed lawsuits and publically complained to the Defendants and to other public entities, regarding matters of public concern such as the Defendants' incompetence and improper governmental activity.

90.   The incompetence and improper governmental activity complained of includes, but is not limited to:

a.   Misuse of County funds including misrepresentations made to HRSA and other authorities in order to obtain funds;

b.   Failure to follow statutory guidelines in administering County business and allocating AIDS Funds;

c.   Irregularities and illegalities in the bidding, awarding and implementation of contracts for AIDS Funds in L.A. County;

d.   Fabrication of false audit reports and flaunting the baseless audit findings to the public including other health providers, in an effort to threaten and intimidate all of Defendants' contractors, including AHF;

e.   Failure to abide by Health and Safety Code sections 120575 and 120175 by refusing to regulate the adult film industry;

f.   The cancellation of RFPs for services determined to be essential for the public health of the community solely because Defendants refuse to award the contract to AHF;

g.   The favoritism shown to certain providers who do not publically criticize Defendants; and

h.   Retaliatory conduct by Defendants for AHF's complaints.

91.   In response to these public complaints, Defendants, under color of law, have retaliated against Plaintiffs by, among other things:

a.   Subjecting Plaintiffs to the 2010 Audit and demanding over $1.7 million dollars when this money is not owed to Defendants;

1

2

3

4

5

6

7

8

    b.      Subjecting AHF to a continuing series of pretextual, arbitrary and punitive financial and other programmatic audits that were much more frequent and invasive than the audits required as part of Defendants' prescribed duties.  Moreover, because Plaintiffs were asked to stop their regular duties to assemble files, data and other information requested by Defendants for the audits, these audits substantially interfered with the regular conduct of business and provision of services at Plaintiffs' facilities;

9

10

11

    c.      Disparaging AHF to other health providers and to the public at large, including their baseless accusation that AHF has overbilled the County in excess of $1.7 million dollars;

12

13

    d.      Refusing to award a contract to AHF, instead cancelling a public service they identified as essential to the community;

14

15

    e.      Refusing to oblige by the terms of agreements they have made with AHF; and

16

17

    f.      Holding AHF to different terms and conditions in service contracts (such as higher positivity rates) than all other health providers.

18

19

20

21

22

23

92.   These activities were undertaken by Defendants with the specific intent to chill Plaintiffs' speech, by disrupting Plaintiffs' nonprofit activities, punishing Plaintiffs for their complaints, disparaging Plaintiffs to the public including the very industry Plaintiffs work within, and attempting to reduce the services provided by and/or payments to AHF for the health care it provides to L.A. County residents.

24

25

26

27

93.   Defendants' punitive actions would deter persons and agencies of ordinary firmness from future exercise of their First Amendment rights.   In fact, on information and belief, they have deterred other health providers from publicly commenting on specific issues of public importance.

28

94.     Defendants' adverse actions against Plaintiffs were substantially motivated by their malicious desire to stifle Plaintiffs' exercise of constitutionally protected conduct, in that, among other things, they: (a) engaged in retaliatory actions in close proximity to Plaintiffs' expressive conduct; (b) Defendants' expressed their opposition to Plaintiffs' speech both to Plaintiffs and to the public at large; and  (c) Defendants' explanations as to why, for example, they will not award a contract to AHF, or why they claim AHF overbilled them by $1.7 million dollars, are nonsensical, and are therefore a mere pretense for their retaliatory conduct.

95.     Defendants' retaliatory actions constitute institutional policies and practices that violate Plaintiffs' free speech rights under the First Amendment of the United States Constitution.  The County, DPH, DHSP, DHS and the Auditor Controller knew about Fielding, Perez, Yaroslavsky, Molina and other individual's violations of Plaintiffs' constitutional rights, but allowed each of them to work within their public offices, and failed to take steps to ameliorate their improper governmental activity against Plaintiffs. The County, DPH, DHSP, DHS and the Auditor Controller therefore exhibited deliberate indifference to the individual Defendants' violations of Plaintiffs' constitutional right to protest Defendants' actions without fear of precisely the type of retaliatory conduct alleged herein.

96.     This retaliation is in violation of Plaintiffs' free speech rights under the First Amendment to the United States Constitution.

97.     In addition, as a direct and proximate result of Defendants' policies and practices described in this Complaint, Plaintiffs have suffered, and continue to suffer, substantial injury.  Such injury includes, but is not limited to: (1) loss of compensation due to the reduction and elimination of service contracts; (2) imminent withholding of monies owed to AHF;  (3) diversion of funds from Plaintiffs' core mission in order to administratively manage Defendants acts of retaliation including their senseless barrage of audits; (4) diversion of funds from AHF's other programs to treat residents left untreated because of Defendants' (a)

failure to allocate AIDS Funds in a manner designed to provide the most health services to the most residents and/or (b) drastic reductions in AIDS Funds allocated to AHF's indigent and incapacitated County patients.

98.   In addition, Defendants' policies and practices have placed and continue to place Plaintiffs in an unjustly negative light, thereby harming AHF's reputations and goodwill, as well as its ability to obtain grants and other funds from sources other than Defendants.  Indeed, other contractors have publicly advocated for cuts in AHF's services based on Defendants' improper and retaliatory actions against it.

99.   Plaintiffs seek an order declaring that Defendants have violated Plaintiffs' First Amendment rights under the United States Constitution, and temporarily and permanently enjoining Defendants from further violating Plaintiffs' free speech rights through their acts of retaliation.

100.  Plaintiffs also seek damages to compensate them for their injuries as described herein.

## SECOND CAUSE OF ACTION

### Violations of Civil Rights Act, 42 U.S.C. Section 1983—First Amendment to the United States Constitution

### [Against All Defendants]

101.  Plaintiffs refer to and incorporate each of the allegations in each of the preceding paragraphs, as if fully set forth herein.

102.  Defendants have acted and continue to act under color of state law and all actions and omissions complained of herein were in execution of actual or implied official policies, practices and procedures.

103.  As described in detail in this Complaint, Defendants, under color of law, have intentionally targeted Plaintiffs by, among other things, subjecting AHF to a continuing series of arbitrary and punitive financial and other programmatic audits with the specific intention of disrupting AHF's nonprofit activities, punishing AHF

for its complaints, reducing or attempting to reduce the services provided by and/or payments to AHF for the health care it provides to L.A. County residents without proper process of law, allocating AIDS Funds to other service providers and publicly chastising AHF with no rational basis and/or with the maliciousand bad faith intent to injure Plaintiffs.

104.   Defendants subjected Plaintiffs to this conduct for the purpose of chilling, disrupting, misdirecting, discrediting, neutralizing, or otherwise suppressing or punishing the protected activities of the Plaintiffs.

105.   Such conduct subjects Plaintiffs to the deprivation of their constitutional rights under the First Amendment of the United States Constitution.

106.   Defendants' retaliatory actions constitute institutional policies and practices that violate Plaintiffs' free speech rights under the First Amendment to the United States Constitution.  The County, DPH, DHSP, DHS and the Auditor Controller knew about Fielding, Perez, Yaroslavsky, Molina and other individual's violations of Plaintiffs' constitutional rights, but allowed each of them to work within their public offices, and failed to take steps to ameliorate their improper governmental activity against Plaintiffs. The County, DPH, DHSP, DHS and the Auditor Controller therefore exhibited deliberate indifference to the individual Defendants' violations of Plaintiffs' constitutional right to protest Defendants' actions without fear of precisely the type of retaliatory conduct alleged herein.

107.   As a direct and proximate result of Defendants' policies and practices described in this Complaint, Plaintiffs have suffered, and continue to suffer, substantial injury.  Such injury includes, but is not limited to, (1) loss of compensation due to the reduction and elimination of service contracts; (2) imminent withholding of monies owed to AHF;  (3) diversion of funds from Plaintiffs' core mission in order to administratively manage Defendants' acts of retaliation including their senseless barrage of audits; (4) diversion of funds from AHF's other programs to treat residents left untreated because of Defendants' (a)

failure to allocate AIDS Funds in a manner designed to provide the most health services to the most residents and/or (b) drastic reductions in AIDS Funds allocated to AHF's indigent and incapacitated County patients.

108.   In addition, Defendants' policies and practices have placed and continue to place Plaintiffs in an unjustly negative light, thereby harming Plaintiffs' reputations and goodwill, as well as AHF's ability to obtain grants and other funds from sources other than Defendants.  Indeed, other contractors have publicly advocated for cuts in AHF's services based on Defendants' improper and retaliatory actions against it.

109.   Plaintiffs seek an order declaring that Defendants have violated Plaintiffs' First Amendment rights, and temporarily and permanently enjoining Defendants from further violating Plaintiffs' free speech rights.

110.   Plaintiffs also seek damages to compensate them for their injuries as described herein.

## THIRD CAUSE OF ACTION

### Violations of Civil Rights Act, 42 U.S.C. Section 1983—Fourteenth Amendment to the United States Constitution

### [Against All Defendants]

111.   Plaintiffs refer to and incorporate each of the allegations in each of the preceding paragraphs, as if fully set forth herein.

112.   Defendants have acted and continue to act under color of state law and all actions and omissions complained of herein were in execution of actual or implied official policies, practices and procedures.

113.   As described in detail in this Complaint, Defendants, under color of law, have intentionally targeted Plaintiffs, and not other similarly situated AIDS service providers, by, among other things, subjecting AHF to a continuing series of arbitrary and punitive financial and other programmatic audits with the specific intention of disrupting AHF's nonprofit activities, punishing AHF for its

complaints, reducing or attempting to reduce the services provided by and/or payments to AHF for the health care it provides to L.A. County residents without proper process of law, allocating AIDS Funds to other service providers and publicly chastising AHF with no rational basis for such differential treatment and/or with malicious and bad faith intent to injure Plaintiffs.

114.  Such conduct subjects Plaintiffs to the deprivation of their constitutional rights under the Fourteenth Amendment to the United States Constitution.

115.  Defendants' retaliatory actions constitute institutional policies and practices that violated and continue to violate Plaintiffs' rights to Equal Protection under the law pursuant to the Fourteenth Amendment to the United States Constitution.  The County, DPH, DHSP, DHS and the Auditor Controller knew about Fielding, Perez, Yaroslavsky, Molina and other individual's violations of Plaintiffs' constitutional rights, but allowed each of them to work within their public offices, and failed to take steps to ameliorate their improper governmental activity against Plaintiffs. The County, DPH, DHSP, DHS and the Auditor Controller therefore exhibited deliberate indifference to the individual Defendants' violations of Plaintiffs' constitutional rights to equal protection under the law.

116.  As a direct and proximate result of Defendants' policies and practices described in this Complaint, Plaintiffs have suffered, and continue to suffer, substantial injury.  Such injury includes, but is not limited to, (1) loss of compensation due to the reduction and elimination of service contracts; (2) imminent withholding of monies owed to AHF;  (3) diversion of funds from Plaintiffs' core mission in order to administratively manage Defendants' acts of retaliation including their senseless barrage of audits; (4) diversion of funds from AHF's other programs to treat residents left untreated because of Defendants' (a) failure to allocate AIDS Funds in a manner designed to provide the most health services to the most residents and/or (b) drastic reductions in AIDS Funds allocated to AHF's indigent and incapacitated County patients.

117.  In addition, Defendants' policies and practices have placed and continue to place Plaintiffs in an unjustly negative light, thereby harming Plaintiffs' reputation and goodwill, as well as AHF's ability to obtain grants and other funds from sources other than Defendants.  Indeed, other contractors have publicly advocated for cuts in AHF's services based on Defendants' improper and retaliatory actions against it.

118.  Plaintiffs seek an order declaring that Defendants have violated Plaintiffs' rights to Equal Protection under the law pursuant to the Fourteenth Amendment to the United States Constitution, and temporarily and permanently enjoining Defendants from further violating Plaintiffs' Equal Protection rights.

119.  Plaintiffs also seek damages to compensate them for their injuries as described herein.

### FOURTH CAUSE OF ACTION
### Conspiracy to Violate Constitutional Rights
### [Against All Defendants]

120.  Plaintiffs refer to and incorporate each of the allegations in each of the preceding paragraphs, as if fully set forth herein.

121.  Defendants agreed to subject Plaintiffs to a continuing series of arbitrary and punitive financial and other programmatic audits with the specific intention of disrupting Plaintiffs' nonprofit activities, punishing Plaintiffs for their complaints, reducing or attempting to reduce the services provided by and/or payments to AHF for the health care it provides to L.A. County residents without proper process of law, allocating AIDS Funds to other service providers and publicly chastising Plaintiffs with no rational basis for such differential treatment and/or with the malicious and bad faith intent to injure Plaintiffs.

122.  Defendants further intended and agreed to inhibit Plaintiffs' political expression.

123.  Defendants conspired and acted in furtherance of the conspiracy, for the purpose of harming Plaintiffs by depriving them of their civil and constitutional rights, as alleged in the first, second, third and sixth causes of action herein.

124.  Defendants' conspiratorial conduct has and will continue to deprive Plaintiffs of their civil and constitutional rights.

125.  As a direct and proximate result of Defendants' conspiratorial conduct, Plaintiffs have incurred funding reductions, damage to their reputation, penalties, and other injuries.

126.  Plaintiffs seek an order declaring that Defendants conspired to violate Plaintiffs' rights to Equal Protection under the law pursuant to the Fourteenth Amendment to the United States Constitution, Plaintiffs' First Amendment rights under the United States Constitution, and Plaintiffs' free speech rights under Article I, Section 2 of the California Constitution, and an order temporarily and permanently enjoining Defendants from further violating Plaintiffs' constitutional rights.

127.  Plaintiffs also seek damages to compensate them for their injuries as described herein.

## FIFTH CAUSE OF ACTION

### Retaliation Under the Federal False Claims Act—31 U.S.C. 3730(h)

### [Against The County Defendants]

128.  Plaintiffs refer to and incorporate each of the allegations in each of the preceding paragraphs, as if fully set forth herein.

129.  AHF is a contractor of services for the County, DHS, DPH and DHSP.

130.  AHF engaged in protected activity under the False Claims Act when it reported the County, DHS, DPH and DHSP to the federal government, for knowingly presenting, or causing to be presented, false or fraudulent claims for payment or approval.

131.  Specifically, Plaintiffs have reported the County, DHS, DPH and DHSP to the federal government for their false claims made to HRSA and their misuse of federal funds awarded as a result of false claims made.

132.   The County, DHS, DPH and DHSP knew Plaintiffs engaged in this protected activity as Plaintiffs did so publicly and exchanged correspondence with these defendants regarding Plaintiffs' allegations.

133.  AHF has been discharged, demoted, suspended, threatened, harassed, and discriminated against in the terms and conditions of its contractor status with the County, DHS, DPH and DHSP, because of the protected acts it had taken in furtherance of its efforts to stop violations of the False Claims Act.

134.   As a direct and proximate result of Defendants' conduct, Plaintiffs have lost contracts, incurred funding reductions, received less favorable terms to their contracts, and other injuries.

135.  Plaintiffs seek general, compensatory and special damages, as well as litigation costs and attorneys' fees, in an amount to be determined by the Court.

## SIXTH CAUSE OF ACTION

### Violations of Article I, Section 2 of the California Constitution

### [Against All Defendants]

136.  Plaintiffs refer to and incorporate each of the allegations in each of the preceding paragraphs, as if fully set forth herein.

137.  As described in detail above, Plaintiffs have publically complained to the Defendants and to other public entities, and have filed lawsuits regarding the Defendants incompetence and improper governmental activity.

138.  The incompetence and improper governmental activity complained of includes, but is not limited to:

a.    Misuse of County funds including misrepresentations made to HRSA and other authorities in order to obtain funds;

b.  Failure to follow statutory guidelines in administering County business and allocating AIDS Funds;

c.  Irregularities and illegalities in the bidding, awarding and implementation of contracts for AIDS Funds in L.A. County;

d.  Fabrication of false audit reports and flaunting the baseless audit findings to the public including other health providers, in an effort to threaten and intimidate all of Defendants' contractors, including AHF;

e.  Failure to abide by Health and Safety Code sections 120575 and 120175 by refusing to regulate the adult film industry;

f.  The cancellation of RFPs for services determined to be essential for the public health of the community solely because Defendants refuse to award the contract to AHF;

g.  The favoritism shown to certain providers who do not publically criticize Defendants; and

h.  Retaliatory conduct by Defendants for AHF's complaints.

139.  In response to these public complaints, Defendants, under color of law, have retaliated against Plaintiffs by, among other things:

a.  Subjecting Plaintiffs to the 2010 Audit and demanding over $1.7 million dollars when this money is not owed to Defendants;

b.  Subjecting AHF to a continuing series of pretextual, arbitrary and punitive financial and other programmatic audits that were much more frequent and invasive than the audits required as part of Defendants' prescribed duties.  Moreover, because Plaintiffs were asked to stop their regular duties to assemble files, data and other information requested by Defendants for the audits, these audits substantially interfered with the regular conduct of business and provision of services at Plaintiffs' facilities;

c.      Disparaging AHF to other health providers and to the public at large, including their baseless accusation that AHF has overbilled the County in excess of $1.7 million dollars;

d.      Refusing to award a contract to AHF, instead cancelling a public service they identified as essential to the community;

e.      Refusing to oblige by the terms of agreements they have made with AHF; and

f.      Holding AHF to different terms and conditions in service contracts (such as higher positivity rates) than all other health providers.

140.   These activities were undertaken by Defendants with the specific intent to chill Plaintiffs' speech, by disrupting AHF's nonprofit activities, punishing AHF for its complaints, tarnishing Plaintiffs to the public including the very industry Plaintiffs work within, and attempting to reduce the services provided by and/or payments to AHF for the health care it provides to L.A. County residents without proper process of law.

141.   Defendants' punitive actions would deter persons and agencies of ordinary firmness from future exercise of their free speech rights under the California Constitution.   In fact, on information and belief, they have deterred other health providers from publicly commenting on specific issues of public importance.

142.   Defendants' adverse actions against Plaintiffs were substantially motivated by their malicious desire to stifle Plaintiffs' exercise of constitutionally protected conduct, in that, among other things, they: (a) engaged in retaliatory actions in close proximity to Plaintiffs' expressive conduct; (b) Defendants' have expressed their opposition to Plaintiffs' speech both to Plaintiffs and to the public at large; and  (c) Defendants explanations as to why, for example, they will not award a contract to AHF, or why they claim AHF overbilled them by $1.7 million dollars, are nonsensical, and are therefore a mere pretense for their retaliatory conduct.

143.   This retaliation is in violation of Plaintiffs' free speech rights under Article I, Section 2 of the California Constitution.

144.   Defendants' retaliatory actions constitute institutional policies and practices that violated Plaintiffs' free speech rights under the California Constitution.  The County, DPH, DHSP, DHS and the Auditor Controller knew about Fielding, Perez, Yaroslavsky, Molina and other individual's violations of Plaintiffs' constitutional rights, but allowed each of them to work within their public offices, and failed to take steps to ameliorate their improper governmental activity against Plaintiffs. The County, DPH, DHSP, DHS and the Auditor Controller therefore exhibited deliberate indifference to the individual Defendants' violations of Plaintiffs' constitutional right to protest Defendants' actions without fear of precisely the type of retaliatory conduct alleged herein.

145.   In addition, as a direct and proximate result of Defendants' policies and practices described in this Complaint, Plaintiffs have suffered, and continue to suffer, substantial injury.  Such injury includes, but is not limited to, (1) loss of compensation due to the reduction and elimination of service contracts; (2) imminent withholding of monies owed to AHF;  (3) diversion of funds from Plaintiffs' core mission in order to administratively manage Defendants' acts of retaliation including their senseless barrage of audits; (4) diversion of funds from AHF's other programs to treat residents left untreated because of Defendants' (a) failure to allocate AIDS Funds in a manner designed to provide the most health services to the most residents and/or (b) drastic reductions in AIDS Funds allocated to AHF's indigent and incapacitated County patients.

146.   In addition, Defendants' policies and practices have placed and continue to place Plaintiffs in an unjustly negative light, thereby harming Plaintiffs' reputations and goodwill, as well as AHF's ability to obtain grants and other funds from sources other than Defendants.  Indeed, other contractors have publicly

advocated for cuts in AHF's services based on Defendants' improper and retaliatory actions against it.

147.  Plaintiffs seek an order declaring that Defendants violated Plaintiffs' free speech rights under the California Constitution, and temporarily and permanently enjoining Defendants from further violating Plaintiffs' free speech rights.

148.  Plaintiffs also seek damages to compensate them for their injuries as described herein.

## SEVENTH CAUSE OF ACTION

## Violations of the California Whistleblower Protection Act, Cal. Govt. Code 9149.23

## [Against Yaroslavsky, Perez, Fielding and Molina]

149.  Plaintiffs refer to and incorporate each of the allegations in each of the preceding paragraphs, as if fully set forth herein.

150.  Defendants Yaroslavsky, Fielding, Perez and Molina are employees as that term is defined under the California Whistleblower Protection Act, Cal. Gov't Code Section 9149.22.

151.  Defendants Yaroslavsky, Fielding, Perez and Molina have engaged in improper governmental activity as described in detail herein and as that term is used in the California Whistleblower Protection Act, Cal. Gov't Code Section 9149.20 *et seq*.

152.  Plaintiffs have publicly complained to Los Angeles County, the State of California, and to other authorities, of improper governmental activity by Defendants.

153.  Defendants Yaroslavsky, Fielding, Perez and Molina have directly and indirectly used their official authority and influence to intimidate, threaten, command, and coerce Plaintiffs' behavior.

154.   Defendants Yaroslavsky, Fielding, Perez and Molina have attempted to intimidate, threaten, command, and coerce Plaintiffs for the purpose of interfering with Plaintiffs' right to disclose these Defendants' improper governmental activities to authorities such as Los Angeles County, the State of California, the State of California Auditor Controller, HRSA, or other federal authorities.

155.   As a direct and proximate result of Defendants' conduct, Plaintiffs have been threatened with a audit report demanding over $1.7 million dollars, lost contracts, incurred funding reductions, received less favorable terms to their contracts, been publically insulted and defamed at meetings including Board of Supervisor meetings, and suffered other injuries,

156.  Plaintiffs seek damages to compensate them for their injuries as described herein.

## EIGHTH CAUSE OF ACTION

### Declaratory Relief — California Code Civ. Proc. section 1060

### [Against All Defendants]

157.  Plaintiffs refer to and incorporate each of the allegations in each of the preceding paragraphs, as if fully set forth herein.

158.  A dispute has arisen between Plaintiffs and Defendants regarding the 2010 Audit and the underlying AHF-LAC Contract, in that Plaintiffs believe and contend, for the reasons set forth above, that Defendants actions as set forth above, were unlawful and invalid.  Plaintiffs are informed and believe and on that basis contend, that Defendants contend in all respects to the contrary.

159.  In particular, Plaintiffs contend that Defendants' so-called 2010 Audit is based on false information and an improper interpretation of the AHF-LAC Contract.

160.  Plaintiffs' position is that all amounts paid pursuant to the AHF-LAC Contract have been properly budgeted, billed and collected by AHF for services

rendered.  The proper interpretation of the unambiguous language of the AHF-LAC Contract requires the conclusion that AHF is to be compensated based on the actual fixed costs it incurred (e.g. salaries), and not based on percentage of "Ryan White" patients versus "non-Ryan White" patients as Defendants argue.

161.  For example, Paragraph 6 of Amendment 11 to the AHF-LAC Contract distinguishes between "net costs" and fees for services, providing that LA County will:

> [C]ompensate Contractor for performing services hereunder for **actual reimbursable net costs** set forth in Schedules 1, 2, . . .and 286 and on a **fee-for-service basis** as set forth in Schedules 15, 16 . . . and 285, and the FEE-FOR-SERVICE REIMBURSEMENT paragraph of this Agreement.  Invoices and cost reports must be submitted and will be reimbursed in accordance with approved line-item detailed budgets.

162.  Further, the AHF-LAC Contract specifically ties payment directly to salaries except where it refers to compensation on a fee-for services basis.   See Exhibit A at Exhibit LL, ¶ 4.  And AHF's cost proposals—which were each accepted by Defendants—specifically define AHF's actual net costs in terms of personnel salaries, and not patient visits.

163.  In contrast, based on no cited authority or noted contract provisions, Defendants contend that AHF's "cost allocation plan" requires allocation of costs among third party payors and Ryan White covered patients.  In essence, Defendants crudely deduce that since approximately 64% of all patients are covered by the AHF-LAC Contract, only 64% of the costs of operating AHF's healthcare clinics can be allocated to the Defendants.  In other words, after operating a different way for twelve years under the contract, Defendants now declare that they will only pay 64% of AHF's medical staff salaries, rent, malpractice insurance and all other fixed costs necessary to run a clinic.

164.  A judicial declaration as to (a) the allocation of costs under the AHF-LAC Contract; and (b) the validity of the 2010 Audit, is therefore necessary and appropriate to determine the respective rights and duties of the parties.

### NINTH CAUSE OF ACTION

### Defamation

### [Against All Defendants]

165.  Plaintiffs refer to and incorporate each of the allegations in each of the preceding paragraphs, as if fully set forth herein.

166.  Defendants have made statements, as detailed above, that Plaintiffs: (a) submitted false claims to the County and overbilled them by over $1.7 million dollars in just one year; (b) are untrustworthy; and (c) lie to their patients.

167.  These statements were made to the public including at Board meetings and at County of Los Angeles Health and Mental Services Cluster meetings.

168.  These statements are all false.

169.  As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered damages and other injuries.

170.  Defendants' actions are injurious to Plaintiffs' trade, business, profession and mission, and constitute defamation per se.

171.  Further, Defendants' statements have impeded Plaintiffs' ability to obtain grants and other funds from sources other than Defendants.  Indeed, other contractors have publicly advocated for cuts in AHF's services based on Defendants' false statements.

172.  Defendants' statements have also placed and continue to place Plaintiffs in an unjustly negative light, thereby harming Plaintiffs' reputations and goodwill that they have built up since 1987.

173.  Plaintiffs seek compensatory and punitive damages for their injuries as described herein.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs demand judgment as follows:

1.       For an award of general, compensatory and special damages, in an amount to be determined according to proof at trial;

2.       For an award of punitive damages, in an amount to be determined according to proof at trial;

3.       For an award of Plaintiffs' costs of suit and attorneys' fees incurred herein pursuant to 42 U.S.C. Section 1988, Section 3730(h)(3), California Code of Civil Procedure 1021.5, or as otherwise allowed by law.

4.       For a declaration that Defendants violated and continue to violate the free speech rights of Plaintiffs pursuant to the First Amendment of United States Constitution;

5.       For an order preliminarily and permanently enjoining Defendants from violating the free speech rights under the First Amendment of the United States Constitution;

6.       For a declaration that Defendants violated and continue to violate Plaintiffs' rights to Equal Protection under the law pursuant to Fourteenth Amendment;

7.       For an order preliminarily and permanently enjoying Defendants from violating the free speech rights under Fourteenth Amendment;

8.       For a declaration that defendants violated and continue to violate the free speech rights of Plaintiffs pursuant to the California Constitution;

9.       For an order preliminarily and permanently enjoining Defendants from violating the free speech rights under the California Constitution;

10.   For a declaration that Defendants violated and continue to violate the Federal False Claims Act's whistleblower protection laws;

11.   For an order preliminarily and permanently enjoining Defendants from violating the Federal False Claims Act's whistleblower protection laws;

12.   For a declaration that Defendants violated and continue to violate the California Whistleblower Protection Act;

13.   For an order preliminarily and permanently enjoining Defendants from violating the California Whistleblower Protection Act;

14.   For a declaration that:

        a.  All amounts paid pursuant to the AHF-LAC Contract have been properly budgeted, billed and collected by AHF for services rendered;

        b.  AHF is to be compensated under the AHF-LAC Contract based on the actual costs it incurs, and not based on percentage of "Ryan White" patients versus "non-Ryan White" patients;

        c.  The 2010 Audit is invalid, void and unenforceable, and constitutes an improper exercise of the Defendants' official conduct.

15.   For an order preliminarily and permanently enjoining Defendants from enforcing the 2010 Audit, demanding $1,752,439.00, and withholding any monies due to AHF under the AHF-LAC Contract.

Dated this 5th day of December, 2012,

Samantha R. Azulay
AIDS Healthcare Foundation
6255 W. Sunset Blvd., 21st FL
Los Angeles, CA 90028
323-860-5200
Fax: 323-467-8450
Tom Myers (SBN 176008)
Samantha R. Azulay (SBN283424)

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Percy Anderson and the assigned discovery Magistrate Judge is Alicia G. Rosenberg.

The case number on all documents filed with the Court should read as follows:

### CV12- 10400 PA (AGRx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

---

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[ ] **Western Division**
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

[ ] **Southern Division**
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

[ ] **Eastern Division**
3470 Twelfth St., Rm. 134
Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.

---

CV-18 (03/06)          NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| AIDS Healthcare Foundation; Michael Weinstein<br>_____<br>*Plaintiff(s)*<br>v.<br>Los Angeles County; Los Angeles County Department of Public Health; Los<br>Angeles County Department of Public Health, Division of HIV and STD<br>Programs; Los Angeles County Department of the Auditor-Controller; Los<br>Angeles County Department of Health Services; Jonathan E. Fielding, MD;<br>Mario J. Perez; Zev Yaroslavsky; Gloria Molina; Does 1-10<br>_____<br>*Defendant(s)* | ) ) ) ) ) ) ) ) ) ) ) ) ) )  Civil Action N **CV12-10400** -PI (A) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

 

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:    Samantha Azulay
AIDS Healthcare Foundation
6255 W. Sunset Blvd., 21st Floor
Los Angeles, CA 90028

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT

DEC - 5 2012

Date: _____

MARIL

*Signature of*

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself □) | DEFENDANTS |
|---|---|
| AIDS Healthcare Foundation; Michael Weinstein | Los Angeles County; Los Angeles County Department of Public Health; Los Angeles County Department of Public Health, Division of HIV and STD Programs; Los Angeles County Department of the Auditor-Controller, Los Angeles County Department of Health Services; Jonathan E. Fielding, M.D.; Mario J. Perez; Zev Yaroslavsky; Gloria Molina, and Doe Defendants 1-10 |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Tom Myers; Samantha R. Azulay<br>AIDS Healthcare Foundation, 6255 W. Sunset Blvd., 21st Floor, Los Angeles, CA 90028. T: 323/860-5200  F: 323/467-8450 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

- □ 1 U.S. Government Plaintiff
- ☑ 3 Federal Question (U.S. Government Not a Party)
- □ 2 U.S. Government Defendant
- □ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☑ 1 | Incorporated or Principal Place of Business in this State | □ 4 | □ 4 |
| Citizen of Another State | □ 2 | □ 2 | Incorporated and Principal Place of Business in Another State | □ 5 | □ 5 |
| Citizen or Subject of a Foreign Country | □ 3 | □ 3 | Foreign Nation | □ 6 | □ 6 |

**IV. ORIGIN** (Place an X in one box only.)

- ☑ 1 Original Proceeding
- □ 2 Removed from State Court
- □ 3 Remanded from Appellate Court
- □ 4 Reinstated or Reopened
- □ 5 Transferred from another district (specify):
- □ 6 Multi-District Litigation
- □ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes  □ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** □ Yes  ☑ No  ☑ **MONEY DEMANDED IN COMPLAINT:** $ over $1 million

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Complaint for Damages and Declaratory and Injunctive Relief Based on Retaliatory Conduct and Violation of Constitutional Rights, 42 U.S.C. section 1983 and 31 U.S.C. 3730(h)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| □ 400 State Reapportionment | □ 110 Insurance | □ 310 Airplane | □ 370 Other Fraud | □ 510 Motions to Vacate Sentence Habeas Corpus | □ 710 Fair Labor Standards Act |
| □ 410 Antitrust | □ 120 Marine | □ 315 Airplane Product Liability | □ 371 Truth in Lending | □ 530 General | □ 720 Labor/Mgmt. Relations |
| □ 430 Banks and Banking | □ 130 Miller Act | □ 320 Assault, Libel & Slander | □ 380 Other Personal Property Damage | □ 535 Death Penalty | □ 730 Labor/Mgmt. Reporting & Disclosure Act |
| □ 450 Commerce/ICC Rates/etc. | □ 140 Negotiable Instrument | □ 330 Fed. Employers' Liability | □ 385 Property Damage Product Liability | □ 540 Mandamus/ Other | □ 740 Railway Labor Act |
| □ 460 Deportation | □ 150 Recovery of Overpayment & Enforcement of Judgment | □ 340 Marine | **BANKRUPTCY** | □ 550 Civil Rights | □ 790 Other Labor Litigation |
| □ 470 Racketeer Influenced and Corrupt Organizations | □ 151 Medicare Act | □ 345 Marine Product Liability | □ 422 Appeal 28 USC 158 | □ 555 Prison Condition | □ 791 Empl. Ret. Inc. Security Act |
| □ 480 Consumer Credit | □ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | □ 350 Motor Vehicle | □ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| □ 490 Cable/Sat TV | | □ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | □ 610 Agriculture | □ 820 Copyrights |
| □ 810 Selective Service | □ 153 Recovery of Overpayment of Veteran's Benefits | □ 360 Other Personal Injury | □ 441 Voting | □ 620 Other Food & Drug | □ 830 Patent |
| □ 850 Securities/Commodities/ Exchange | □ 160 Stockholders' Suits | □ 362 Personal Injury-Med Malpractice | □ 442 Employment | □ 625 Drug Related Seizure of Property 21 USC 881 | □ 840 Trademark |
| □ 875 Customer Challenge 12 USC 3410 | □ 190 Other Contract | □ 365 Personal Injury-Product Liability | □ 443 Housing/Acco-mmodations | □ 630 Liquor Laws | **SOCIAL SECURITY** |
| ☑ 890 Other Statutory Actions | □ 195 Contract Product Liability | □ 368 Asbestos Personal Injury Product Liability | □ 444 Welfare | □ 640 R.R. & Truck | □ 861 HIA (1395ff) |
| □ 891 Agricultural Act | □ 196 Franchise | | □ 445 American with Disabilities - Employment | □ 650 Airline Regs | □ 862 Black Lung (923) |
| □ 892 Economic Stabilization Act | **REAL PROPERTY** | **IMMIGRATION** | □ 446 American with Disabilities - Other | □ 660 Occupational Safety /Health | □ 863 DIWC/DIWW (405(g)) |
| □ 893 Environmental Matters | □ 210 Land Condemnation | □ 462 Naturalization Application | □ 440 Other Civil Rights | □ 690 Other | □ 864 SSID Title XVI |
| □ 894 Energy Allocation Act | □ 220 Foreclosure | □ 463 Habeas Corpus-Alien Detainee | | | □ 865 RSI (405(g)) |
| □ 895 Freedom of Info. Act | □ 230 Rent Lease & Ejectment | □ 465 Other Immigration Actions | | | **FEDERAL TAX SUITS** |
| □ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | □ 240 Torts to Land | | | | □ 870 Taxes (U.S. Plaintiff or Defendant) |
| □ 950 Constitutionality of State Statutes | □ 245 Tort Product Liability | | | | □ 871 IRS-Third Party 26 USC 7609 |
| | □ 290 All Other Real Property | | | | |

## CV12-10400

FOR OFFICE USE ONLY:   Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

| CV-71 (05/08) | CIVIL COVER SHEET | Page 1 of 2 |
|---|---|---|

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑No ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or
                               ☐ B. Call for determination of the same or substantially related or similar questions of law and fact, or
                               ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
                               ☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
   ☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
   ☑   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
   **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _S. K. Aye_____   Date _December 5, 2012_____

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |