UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-10400 PA (AGRx) | Date | February 10, 2014 |
|---|---|---|---|
| Title | AIDS Healthcare Foundation, et al. v. Los Angeles County, et al. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Paul Songco | None | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** IN CHAMBERS — COURT ORDER

Before the Court is a Motion for Summary Judgment filed by defendants Los Angeles County (the "County") and Mario Perez ("Perez") (collectively "Defendants") (Docket No. 86). Defendants contend that they are entitled to summary judgment on the claims alleged against them in the First Amended Complaint filed by plaintiffs AIDS Healthcare Foundation ("AHF") and Michael Weinstein ("Weinstein") (collectively "Plaintiffs"). Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument. The hearing calendared for February 10, 2014, is vacated, and the matter taken off calendar.

I.   **Factual and Procedural Background**

AHF is a nonprofit medical care provider that provides services to people afflicted with HIV/AIDS. Weinstein is the Co-founder and President of AHF. AHF has more than $750 million in annual revenues. For many years, AHF has received funding from the County for some of the medical services it provides. AHF's largest contract with the County is the Medical Outpatient Services Agreement (the "Contract"). Since 1998, a significant portion of the funds disbursed by the County to AHF under the Contract has come from the federal government under the Ryan White Comprehensive AIDS Resource Emergency Act, Title 42 U.S.C. § 300ff-11 (the "CARE Act"). The federal government provides funds under the CARE Act to local governments, including the County, for HIV/AIDS services. As a grantee of the CARE Act, the County, through its Department of Health, Division of HIV and STD Programs ("DHSP"), disburses CARE Act funds to various contractors, including AHF.

The Health Resources and Services Administration ("HRSA"), the federal agency in charge of administering CARE Act funds, requires the County to audit its contractors. The Contract incorporates the CARE Act by reference. Under both the CARE Act and the Contract, the CARE Act must be the "payer of last resort." Paragraph 10(c) of the Additional Provisions of the Contract states:

> In no event shall County be required to reimburse Contractor for those costs of services provided hereunder which are covered by revenue from

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-10400 PA (AGRx) | Date | February 10, 2014 |
|---|---|---|---|
| Title | AIDS Healthcare Foundation, et al. v. Los Angeles County, et al. | | |

        or on behalf of clients/patients or which are covered by funding from other governmental contracts or grants.

The Contract requires AHF to "document" the eligibility of its patients as well as to identify and obtain "all potential sources of payments to cover the costs of services" to eligible patients. Under the Contract, AHF agrees to "extend to [the County] the right to review and monitor [AHF's] programs, policies, procedures, and financial and/or other records, and to inspect its facilities for contractual compliance at any reasonable time." AHF also has an obligation to cooperate with the County in fiscal and programmatic audits. The Contract requires AHF to "reimburse County for any federal, State, or County audit exceptions resulting from noncompliance herein on the part of [AHF] or any subcontractor."

       Over the last ten years, Plaintiffs have complained and publicly criticized the County for purported failings and deficiencies in its public health administration. Recent examples of Plaintiffs purported criticism of the County include: the County's spending of CARE Act funds; Plaintiffs advocacy for a condom requirement in adult films that was not supported by the County ("Measure B"); Plaintiffs' lawsuit against the County challenging a no-bid contract to Ramsell Corporation; and Plaintiffs campaign to create a separate Los Angeles City Health Department. Despite AHF's criticism, AHF has entered into nine different contracts with the County, and the County expects to pay AHF approximately $11.4 million over the next year for services rendered on AHF's nine contracts. These contracts include a new ambulatory outpatient medical contract that AHF and the County executed in 2013.

       In this action, Plaintiffs allege that Defendants have retaliated against them for engaging in their advocacy and public criticism. Specifically, Plaintiffs contend that: (1) Defendants participated in a flawed and protracted audit of AHF in 2009 that was not completed until 2012 (the "2009 Audit"); (2) Defendants demanded payment of over $1.7 million from AHF that the flawed audit wrongly concluded was owed to the County in September, October, and November of 2012; (3) withdrawing a request for proposal ("RFP") for a client benefits administrative services program in 2011; (4) announcing in 2009 that AHF would no longer receive County funds for services in the Antelope Valley and reallocating those funds to a competing provider beginning in 2011; and (5) initiating another audit of AHF's programs and finances in 2013 (the "2013 Audit").

       Plaintiffs commenced this action on December 5, 2012. The Court granted Defendants' Motion to Dismiss the original Complaint and Plaintiffs filed their First Amended Complaint ("FAC"). The FAC alleged claims for: (1) violation of the First Amendment pursuant to 42 U.S.C. § 1983; (2) conspiracy to violate federal constitutional rights; (3) retaliation under the False Claims Act, 31 U.S.C. § 3730(h); and (4) declaratory relief pursuant to California Civil Code § 1060. On June 3, 2013, the Court granted a Motion to Dismiss that dismissed the conspiracy and False Claims Act Claims with prejudice. The Court also dismissed the claims asserted against Jonathan Fielding, Zev Yaroslavsky, and Gloria Molina with prejudice. The Court additionally limited the surviving First Amendment claims alleged against the County and Perez to those occurring within two years of the filing of the original Complaint.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-10400 PA (AGRx) | Date | February 10, 2014 |
|---|---|---|---|
| Title | AIDS Healthcare Foundation, et al. v. Los Angeles County, et al. | | |

II.  **Legal Standard**

FRCP 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show an absence of an issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once the moving party does so, the non-moving party must go beyond the pleadings and designate specific facts showing a genuine issue for trial. Id. at 324. The court does "not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial." Balint v. Carson City, 180 F.3d 1047, 1054 (9th Cir 1999). A "'scintilla of evidence,' or evidence that is 'merely colorable' or 'not significantly probative,'" does not present a genuine issue of material fact. United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1542 (9th Cir), cert denied, 493 U.S. 809, 110 S. Ct. 51, 107 L. Ed. 2d 20 (1989) (emphasis in original, citation omitted).

The substantive law governing a claim or defense determines whether a fact is material. T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631-32 (9th Cir 1987). The court must view the inferences drawn from the facts "in the light most favorable to the nonmoving party." Id. at 631 (citation omitted). Thus, reasonable doubts about the existence of a factual issue should be resolved against the moving party. Id. at 630-31. However, when the non-moving party's claims are factually "implausible, that party must come forward with more persuasive evidence than would otherwise be [required] . . . ." California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir 1987), cert denied, 484 U.S. 1006, 108 S. Ct. 698, 98 L. Ed. 2d 650 (1988) (citation omitted). "No longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." Id. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322, 106 S. Ct. at 2552.

III.  **Analysis**

Defendants' Motion for Summary Judgment contends that Plaintiffs cannot prevail on their surviving First Amendment retaliation claim because Plaintiffs have not suffered any adverse action, Plaintiffs have no evidence that their speech was a substantial or motivating factor for any adverse action, and even if there is such evidence, Defendants have legitimate administrative justifications for their actions that outweigh Plaintiffs' free speech rights and would have taken the same actions even in the absence of Plaintiffs' criticism. Defendants additionally assert that AHF's declaratory relief claim must fail because there is no evidence that the audit begun in 2009 and resulting in the demand for payment of the $1.7 million are erroneous.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-10400 PA (AGRx) | Date | February 10, 2014 |
|---|---|---|---|
| Title | AIDS Healthcare Foundation, et al. v. Los Angeles County, et al. | | |

A. **First Amendment Retaliation**

"The First Amendment forbids government officials from retaliating against individuals for speaking out." Blair v. Bethel School Dist., 608 F.3d 540, 543 (9th Cir. 2010). To prevail on a § 1983 First Amendment retaliation claim, a plaintiff must prove:

> (1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action.

Id. If a government contractor such as AHF meets this initial burden:

> [T]he government officials (and the government itself) can nonetheless escape liability if they demonstrate either that: (a) under the balancing test established by Pickering v. Bd. of Educ., 391 U.S. 563, 568, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968), legitimate administrative interests in promoting efficient service-delivery and avoiding workplace disruption outweigh the contractor's free speech interests; or (b) under the mixed motives analysis established by Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977), they would have taken the same actions in the absence of the contractor's expressive conduct.

Alpha Engergy Savers, Inc. v. Hansen, 381 F.3d 917, 923 (9th Cir. 2004) (citing Bd. of County Comm'rs v. Umbehr (Umbehr), 518 U.S. 668, 675-76, 116 S. Ct. 2342, 135 L. Ed. 2d 843 (1996)). The absence of criticism prior to the protected speech, the proximity in time between the protected action and the allegedly retaliatory action, and warnings not to speak can provide circumstantial evidence to support the required substantial causal relationship between the protected activity and the adverse action. See Schwartzman v. Valenzuela, 846 F.2d 1209, 1212 (9th Cir. 1988). Evidence that the employer's proffered explanations for the adverse actions were false and pretextual may also provide evidence of the existence of a retaliatory motive. See Keyser v. Sacramento City Unified Sch. Dist., 265 F.3d 741, 744 (9th Cir. 2001) (citing Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1315-16 (9th Cir. 1989)).

In evaluating Plaintiffs' claims and Defendants' proffered reasons for taking the actions they have, the Court is cognizant of Plaintiffs' dual roles as both a service provider, subject to routine audits pursuant to its contracts with the County, and as advocates for particular policies that some in the County may not support. The fact that Plaintiffs have these dual roles should not provide them with immunity from the audits to which they have contractually subjected themselves. The County and its policy makers have the right to disagree with AHF and Weinstein. The County and its officials also

Case 2:12-cv-10400-PA-SH   Document 104   Filed 02/10/14   Page 5 of 11   Page ID #:9691

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-10400 PA (AGRx) | Date | February 10, 2014 |
|---|---|---|---|
| Title | AIDS Healthcare Foundation, et al. v. Los Angeles County, et al. | | |

have the contractual right to audit AHF, and must be allowed to do so without inordinate fear of having to defend against a lawsuit. See Dietrich v. John Ascuaga's Nugget, 548 F.3d 892, 901 (9th Cir. 2008) ("There is almost always a weak inference of retaliation whenever a plaintiff and a defendant have had previous negative interactions; holding that this case survives summary judgment would provide almost no 'protect[ion for] government officials from the disruption caused by unfounded claims.'") (quoting Skoog v. County of Clackamas, 469 F.3d 1221, 1232 (9th Cir. 2006)). A service provider should not be able to shield themselves from audits, or automatically have a viable civil rights claim, simply by making public statements critical of the County. At the same time, of course, service providers should not be retaliated against for exercising their free speech rights.

1.      **Initiation of the 2009 and 2013 Audits**

In its order on Defendants' Motion to Dismiss the FAC, the Court concluded that Plaintiffs' claim related to the initiation of the 2009 Audit, as opposed to the County's later efforts to recover the alleged $1.7 million overpayment, was barred by the applicable statute of limitations because the audit was initiated more than two years before Plaintiffs initiated this action. The Court also expressed its reluctance to conclude that the initiation of an audit in these circumstances, involving a large and complex contract with sophisticated parties that includes language within the contract contemplating routine audits, could qualify as an adverse action. Plaintiffs contend that the initiation of the 2009 Audit remains a viable instance of Defendants' retaliation because the audit was not completed until 2012. While the Court continues to conclude that any claim related tot he initiation of the 2009 Audit remains barred by the applicable statute of limitations, Plaintiffs additionally assert that the 2013 Audit was also initiated to retaliate against them for their continued advocacy and criticism of the County. Except for the statute of limitations issue related to the initiation of the 2009 Audit, Plaintiffs' claims concerning the initiation of the 2009 and 2013 Audits otherwise raise identical legal issues.

Although there may be situations in which an audit could constitute an adverse action, the routine audits of contractors providing millions of dollars worth of services to government entities pursuant to lengthy and detailed contracts that contain provisions requiring the contractors to participate in audits simply do not qualify as adverse actions. See Coszalter v. City of Salem, 320 F.3d 968, 976 (9th Cir. 2003) (holding that an "'adverse employment action' was an action 'reasonably likely to deter employees from engaging in protected activity'"). Under the Contract, AHF agreed to "extend to [the County] the right to review and monitor [AHF's] programs, policies, procedures, and financial and/or other records, and to inspect its facilities for contractual compliance at any reasonable time." Because AHF agreed to allow the County to audit its programs and finances, it is difficult to see how such a contemplated audit would deter a contractor "of ordinary firmness" from engaging in protected activity. See Mendocino Envtl. Ctr. v. Mendocino Cnty, 192 F.3d 1283, 1300 (9th Cir. 1999); see also Trahant v. Royal Indem. Co., 121 F.3d 1094, 1098 (7th Cir. 1997) ("The audit itself was not an 'adverse action' that would support [plaintiff's] theory of retaliation . . . .").

Even if such audits could constitute an adverse action, Defendants have established a legitimate administrative interest in conducting the audits that outweighs Plaintiffs' free speech rights and that they

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-10400 PA (AGRx) | Date | February 10, 2014 |
|---|---|---|---|
| Title | AIDS Healthcare Foundation, et al. v. Los Angeles County, et al. | | |

would have performed the audits regardless of Plaintiffs' criticism. The County's Auditor Controller ("Auditor") conducted audits of AHF in 2006, 2009, and began an audit in 2013. The audits serve the legitimate governmental interest of establishing that the County's contractors are adhering to the terms of their contracts and not receiving funds they are not entitled to receive. Moreover, it is undisputed that HRSA requires the County to conduct audits of its contractors. This federal requirement that the County audit its contractors, including AHF, establishes that the County would have conducted the audits regardless of Plaintiffs' criticism. Indeed, beginning in 2013, HRSA is now requiring the County to conduct annual fiscal audits of its contractors. Additionally, although the 2009 Audit did not become final until 2012, and therefore took longer to complete than other audits, AHF has been subjected to fewer audits than any other contractor that provides outpatient medical services for the County.

Other than being conducted in close proximity to some of Plaintiffs' public criticisms of Defendants, Plaintiffs have no evidence that the 2009 and 2013 Audits were conducted in retaliation for Plaintiffs' exercise of their First Amendment rights. The Court also believes that it is important to acknowledge that Plaintiffs are not simply contractors who happen to have made a small number of public statements. Instead, they are advocates who repeatedly interject themselves in the political process. Because of the frequency with which they make public statements, and the fact that they often have notice of when the County may undertake some action Plaintiffs consider to be adverse, they could time their statements to coincide with such actions. As a result, and particularly in the absence of any statements issued by Defendants warning Plaintiffs to stop their criticisms, it makes little sense in this instance to conclude that mere proximity in time between the protected action and the allegedly retaliatory action should call into question Defendants' legitimate interests in conducting audits of its contractors. Additionally there is no dispute that Defendants would have conducted the audits regardless of the protected activity. For these reasons, Plaintiffs have failed to raise a triable issue of fact that Defendants' explanations for the initiation of the audits are false and pretextual.

### 2. **Efforts to Collect $1.7 Million Resulting from the 2009 Audit**

On September 30, 2009, the Auditor completed a draft audit report that found, among other things, that AHF had billed 100% of its budgeted costs to the County for certain expenses, including rent and some salaries, despite receiving payment from sources other than the County for some of the services it provided to some of its patients. The County believes that some of these costs should have been allocated to these other funding sources and that, as a result, AHF received $1,731,175 in non-reimbursable costs from the County. AHF contends that neither the Contract nor the history of dealings between the parties required it to allocate these costs. On October 15, 2010, the Auditor issued a second draft audit report. On October 27, 2010, the Auditor and AHF discussed the draft audit findings. During this meeting, the Auditor suggested to AHF that it could submit an alternative methodology to allocate its costs in response to the allocation used by the Auditor in the 2010 Draft Report. Despite the Auditor's suggestion, AHF elected not to submit an alternative methodology in connection with the 2009 Audit. The County received a letter from AHF objecting to the draft audit findings on November 24, 2010. On May 31, 2012, the County reissued to AHF the 2010 Draft Report, which repeated its finding that AHF overcharged the County in the amount of $1,731,175 (hereinafter, the "2012 Draft

Case 2:12-cv-10400-PA-SH  Document 104  Filed 02/10/14  Page 7 of 11  Page ID #:9693

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-10400 PA (AGRx) | Date | February 10, 2014 |
|---|---|---|---|
| Title | AIDS Healthcare Foundation, et al. v. Los Angeles County, et al. | | |

Report"). On June 5, 2012, AHF objected to the 2012 Draft Report. At the exit conference in July 2012, the Auditor again informed AHF that it could propose an alternative allocation methodology. When AHF did not do so, the Auditor issued the final audit report on August 16, 2012 (the "Final Audit Report"). Following the issuance of the final audit report, the County sought repayment from AHF of the non-reimbursable costs in the Final Audit Report, in September, October, and November of 2012.

Plaintiffs contend that the manner in which the Auditor conducted the 2009 Audit and Defendants' efforts to collect the $1.7 million the Final Audit Report concluded AHF owes to the County were done to retaliate against AHF for engaging in protected First Amendment activity. As with the initiation of the 2009 and 2013 Audits, however, Plaintiffs' only evidence of Defendants' alleged retaliatory motive is the proximity in time of some of Plaintiffs' activity and Defendants' demands for payment.

According to the Auditor's staff who completed the 2009 Audit, they were not aware of Plaintiffs' criticisms of Defendants or their advocacy efforts while conducting the 2009 Audit. Additionally, although Plaintiffs repeatedly contend that the 2009 Audit and resulting demands for repayment were based on a "known false assumption" that AHF did not have a cost allocation plan, it is undisputed that AHF did not allocate its costs and instead billed the County for 100% of certain costs despite receiving funding from other sources. While the parties may dispute the accuracy and merit of the Auditor's attempt to allocate those costs by using the 36% of patients who had some form of insurance, it is also undisputed that the Auditor repeatedly provided AHF with an opportunity to provide an alternative allocation formula. Nothing about these interactions suggest that Defendants had a retaliatory motive in how they conducted the 2009 Audit. Moreover, the Auditor's issuance of the Final Audit Report, the Final Audit Report's finding of a $1.7 million overpayment, and the Contract's language obligating AHF to reimburse any amounts identified as audit exceptions support the conclusion that Defendants possessed legitimate administrative interests in seeking recovery of that amount outweigh Plaintiffs' free speech rights. Finally, there is no evidence that creates a triable issue of fact calling into question Perez's testimony that he would have taken the same actions regardless of Plaintiffs' protected activity.

### 3. **Elimination of AHF's Funding for the Antelope Valley**

Plaintiffs alleged in the FAC that the County reallocated funding for services provided in the Antelope Valley in 2009 from AHF to a rival organization that had less experience than AFH but was run by "significant campaign contributors to [County Supervisor Zev] Yaroslavsky." Defendants moved to dismiss Plaintiffs' retaliation claim based on this alleged instance of retaliation because it was barred by the applicable statute of limitations. See Canatella v. Van De Kamp, 486 F.3d 1128, 1132-33 (9th Cir. 2007) (applying California Code of Civil Procedure section 335.1's two-year statute of limitations for personal injury actions to § 1983 claims). Although the Court granted Defendants' Motion to Dismiss as to the reallocation of funds for AHF's services in the Antelope Valley, Plaintiffs' Opposition to the Motion for Summary Judgment now contends that because the funds were not finally reallocated until 2011, it remains a viable instance of retaliation.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-10400 PA (AGRx) | Date | February 10, 2014 |
|---|---|---|---|
| Title | AIDS Healthcare Foundation, et al. v. Los Angeles County, et al. | | |

      Plaintiffs never argued in opposition to the Motion to Dismiss that it was not deprived of the Antelope Valley funds until 2011. Nor did Plaintiffs seek to have the Court reconsider its ruling in granting the Motion to Dismiss based on actions occurring in 2011. Even if the Court were to consider the 2011 actions, which were not alleged in the FAC, Plaintiffs again have no evidence other than proximity in time to some of their public statements and advocacy efforts that these actions were taken in retaliation for Plaintiffs protected activity. Indeed, as the FAC alleges, the funds were shifted to another provider not because of a retaliatory motive, but because the other provider had better political connections. See Blair, 608 F.3d at 545 ("[T]he First Amendment does not succor casualties of the regular functioning of the political process."). Plaintiffs have come forward with no evidence suggesting a "substantial causal relationship between the constitutionally protected activity" and Defendants' decision to reallocate funding in the Antelope Valley. Id. at 543.

      4.      **Cancellation of Client Benefits Administrative Services RFP**

      DHSP issued RFP #2011-01 in May 2011 requesting applications for a single qualified third party administrator to manage the Ryan White Program Client Benefits Administration Services ("Administration Services Contract"). The Administration Services Contract would provide funds for the hiring of benefits specialty personnel to assist clients in navigating the healthcare services systems to ensure that clients would be aware of all available benefits. AHF and a contractor called Health Strategic Initiatives applied under RFP #2011-01. Contrary to Plaintiffs' allegations in the FAC that AHF "was the only organization to respond" to the RFP, another entity also submitted a response. On November 23, 2011, DHSP informed all applicants that it intended to withdraw RFP #2011-01 ("November 23 Letter"). In the November 23 Letter, DHSP stated that it had decided to withdraw RFP #2011-01 because DHSP was "reexamine[ing] the requirements for centralized screening and enrollment services in coordination with the Department of Health Services' new low income health plan, Healthy Way LA." DHSP was concerned that the implementation of the Healthy Way LA program and the Affordable Care Act would change the benefits available to people living with HIV/AIDS and change how healthcare would be paid for and where patients would receive services. Therefore, Perez believed that the proposed contract might not be the best expenditure of County funds.

      Unlike the cancellation of an existing contract or a reduction of funding, which would unquestionably constitute adverse actions, it is far less clear that the cancellation of an RFP should be considered an adverse action. See Umbehr, 518 U.S. at 685, 116 S. Ct. at 2352 ("Because Umbehr's suit concerns the termination of a pre-existing commercial relationship with the government, we need not address the possibility of suits by bidders or applicants for new government contracts who cannot rely on such a relationship."); but see Marez v. Bassett, 595 F.3d 1068, 1075 (9th Cir. 2010) (holding that failing to inform a contractor of an opportunity to submit a bid could constitute an adverse action). The Court concludes that a government has not engaged in an adverse action when it withdraws an an RFP, which by its own terms may be withdrawn or cancelled at any time, and has not otherwise ripened into any sort of contractual right or expectation.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-10400 PA (AGRx) | Date | February 10, 2014 |
|---|---|---|---|
| Title | AIDS Healthcare Foundation, et al. v. Los Angeles County, et al. | | |

Even if the withdrawal of the RFP could constitute an adverse action, Plaintiffs do not dispute that at the time DHSP withdrew the RFP, DHSP and the County were assessing how best to implement the Affordable Care Act and develop Healthy Way LA. Instead, Plaintiffs claim that the County knew of these issues when it issued the RFP. Additionally, after withdrawing the RFP, the County provided additional funds to its contractors to provide some of these services. AHF received the largest share of these additional funds. The Court therefore concludes that Plaintiffs have failed to create a triable issue of fact concerning the allegedly pretextual nature of Defendants' explanations for why it withdrew the RFP. Instead, the Court determines that there is no legitimate dispute that Defendants would have taken the same action regardless of Plaintiffs' protected activity.[1]

B. **Outstanding Discovery Issues**

In their Opposition, Plaintiffs argue, pursuant to Federal Rule of Civil Procedure 56(d), that "outstanding discovery issues warrant denial of summary judgment because evidence could exist that would show a genuine dispute." Under Rule 56(d), the Court has discretion to extend a response deadline where "the nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Accordingly, to meet its burden under Rule 56(d), Defendant must show: "(1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) that the facts sought exist; and (3) that the sought-after facts are essential to oppose summary judgment." Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp., 525 F.3d 822, 827 (9th Cir. 2008). An extension is not justified merely because discovery is incomplete or desired facts are unavailable. Jensen v. Redev. Agency of Sandy City, 998 F.2d 1550, 1554 (10th Cir. 1993). Rather, "the party filing the affidavit must show how additional time will enable him to rebut the movant's allegations of no genuine issue of fact." Id. "[T]he party seeking a continuance bears the burden to show what specific facts it hopes to discover that will raise an issue of material fact." Continental Maritime v. Pacific Coast Metal Trades, 817 F.2d 1391, 1395 (9th Cir. 1987). "The burden is on the party seeking additional discovery to proffer sufficient facts to show that the evidence sought

---

[1] Plaintiffs evidence of pretext is the purported silence of a County employee when an AHF employee "intimated" to the County employee the AHF employee's belief that the RFP was withdrawn because the County did not want AHF to benefit from the contract identified in the RFP. "Before admitting a statement as an admission by acquiescence [under Federal Rule of Evidence 801(d)(2)(B)], the District Court must determine, as a preliminary question, whether under the circumstances an innocent defendant would normally be induced to respond. The District Court should not submit the evidence of an admission by silence to the jury unless it first finds that sufficient foundational facts have been introduced for the jury reasonably to conclude that the defendant did actually hear, understand and accede to the statement." United States v. Sears, 663 F.2d 896, 904 (9th Cir. 1981). Here, the Court finds that Plaintiffs have failed to establish that the circumstances support a conclusion that the County employee would be induced to respond to the AHF employee's "intimation." Accordingly, this evidence is not admissible to establish a triable issue of fact.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-10400 PA (AGRx) | Date | February 10, 2014 |
|---|---|---|---|
| Title | AIDS Healthcare Foundation, et al. v. Los Angeles County, et al. | | |

exists, and that it would prevent summary judgment." Chance v. Pac-Tel. Teletrac, Inc., 242 F.3d 1151, 1161 n.6 (9th Cir. 2001).

Plaintiffs have not met their burden to justify a Rule 56(d) continuance. Plaintiffs have not identified with the requisite specificity what facts they hope to elicit, that the facts exist, or how those facts are essential to defeating Defendants' Motion for Summary Judgment. Moreover, the Court had already continued the discovery and motion cutoff dates and there is no adequate reason Plaintiffs could not have completed the depositions they now seek to complete at an earlier time. Instead, Plaintiffs engaged in discovery disputes that they lost and resulted in their having to pay to Defendants $11,000.00. The Court therefore denies Plaintiffs' request pursuant to Rule 56(d).

C.  **Declaratory Relief Claim**

The only claim over which this Court possesses original jurisdiction is Plaintiffs' First Amendment retaliation claim. As discussed above, the Court has concluded that Defendants are entitled to summary judgment on that claim. The Court possesses only supplemental jurisdiction over Plaintiffs' declaratory relief claim and the County's Counterclaim for declaratory relief under 28 U.S.C. § 1367(a). Once supplemental jurisdiction has been established under § 1367(a), a district court "can decline to assert supplemental jurisdiction over a pendant claim only if one of the four categories specifically enumerated in section 1367(c) applies." Executive Software v. U.S. Dist. Court for the Cent. Dist. of Cal., 24 F.3d 1545, 1555–56 (9th Cir. 1994). The Court may decline supplemental jurisdiction under § 1367(c) if: "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."

Here, the Court has dismissed all of the federal claims over which it has original jurisdiction. Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiffs' declaratory relief claim and the County's Counterclaim. See 28 U.S.C. § 1367(c)(3). The Court therefore dismisses Plaintiffs' declaratory relief claim and the County's Counterclaim without prejudice.

**CONCLUSION**

For all of the foregoing reasons, the Court concludes that Defendants are entitled to summary judgment on Plaintiffs' First Amendment retaliation claim. Rather than a sincere attempt to vindicate their First Amendment rights, the Court fears that Plaintiffs instituted this action in an effort to obtain a tactical advantage in their ongoing political battles with Defendants and obtain leverage in what, it turns out, is nothing more than a state law declaratory relief claim over the findings of the 2009 Audit and the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-10400 PA (AGRx) | Date | February 10, 2014 |
|---|---|---|---|
| Title | AIDS Healthcare Foundation, et al. v. Los Angeles County, et al. | | |

interpretation of the Contract.[2/] Despite more than a year of actively pursuing their First Amendment retaliation clam, Plaintiffs have no evidence of a substantial causal relationship between Plaintiffs' constitutionally protected activity and the asserted adverse actions. To the extent that some of Plaintiffs' many public statements and actions may have coincided with these asserted adverse actions, the Court concludes that the undisputed facts establish that Defendants had legitimate administrative reasons for taking each of their actions that outweigh AHF's free speech interests and Defendants would have taken the same actions in the absence of AHF's expressive conduct. See Alpha Engergy Savers, Inc., 381 F.3d at 923. The Court declines to exercise supplemental jurisdiction over Plaintiffs' declaratory relief claim and the County's Counterclaim. The Court dismisses those claims without prejudice. See 28 U.S.C. § 1367(c)(3). The Court will issue a Judgment consistent with this Order.

      IT IS SO ORDERED.

---

[2/]     On November 15, 2012, less than a month before Plaintiffs filed this action, Weinstein wrote an email to an AHF employee that said:

> It is time to take the gloves off. We need to go after Zev [Yaroslavsky] directly and hard. He is the real power behind our problems with the County on porn, the audit and fee-for-service. Plus he is a lame duck and an arrogant jerk. His Berman-Waxman power base is dead and he and others need to be taught a lesson. The voters are with us.
>
> . . .
>
> The next phase is to call for [Jonathan] Fielding and Mario [Perez] to step down.
>
> This needs to be coordinated with our legal strategy. I want to go to court much sooner than later.
>
> I am tired of us being on defense. We have little to lose considering how unreasonable they have been.

Exhibit F to Declaration of John Ly in Support of Defendants' Ex Parte Application for Protective Order (Docket No. 88).